PETER OLSON, APPELLANT, v. G. OSKAR SCOTT ET AL., APPELLEES.

1. ALLEGATIONS OF FRAUD AND COLLUSION MUST BE AFFIRMATIVELY ESTABLISHED.—Fraud can never be presumed or inferred from circumstances of suspicion only, but must be affirmatively established by evidence. So the allegations of a bill, charging that defendants made a collusive and fraudulent sale of real estate on which plaintiff held a trust-deed for purchase money, and that they fraudulently procured the release of the trust-deed by the trustee, and the acceptance by him of other securities whereby the time of payment was wrongfully extended, must be affirmatively established to entitle the plaintiff to relief.

2. ERROR OF TRUSTEE CURED BY DECREE.—If in a given case, a trustee did exceed his powers in releasing a trust deed and accepting securities which postponed the day of payment, the error may be cured in an action between the parties, by a decree for immediate payment.

*Appeal from District Court of Arapahoe County.*

THIS suit originated in transactions between the parties concerning a certain tract of land, appellant being the owner

of the farm.   Scott, McCourt and Wiswall, (appellees,) con-
sidering it desirable for subdivision as suburban property for
residences, purchased it for that purpose, paying no money.
The property was conveyed by appellant by warranty deed,
a note made for the entire purchase, $16,000, and a trust
deed given upon the property to secure the payment.   A
written contract was made and executed by the parties ex-
planatory of the transaction, which is as follows:

" Witnesseth :—That whereas, the said parties of the first
part have this day purchased from the said Peter Olson certain
real estate in the south $\frac{1}{2}$ of the southwest $\frac{1}{4}$ of section 33,
township 4 south, of range 68 west; and the north $\frac{1}{2}$ of the
northwest $\frac{1}{4}$ of section 4, in township 5 south, of range 68
west, more particularly described in the warranty deed of
even date herewith given by said party of the second part to
said parties of the first part.

" And Whereas, said parties of the first part have platted
said land and laid the same out into lots, blocks, streets and
alleys, as per a map of the same this day filed in the recor-
der's office of said Arapahoe county.

" And Whereas, said parties of the first part have this
day executed to said party of the second part a trust deed
on said property for the sum of sixteen thousand dollars
($16,000.)

" And Whereas, said parties of the first part are desirous
of paying said $16,000 as soon and as rapidly as possible,
and said parties of the first part are desirous of selling said
property so platted as aforesaid, and putting the same on the
market for sale :

" Now Therefore, In consideration of the premises, it is
hereby agreed by and between the parties hereto, that as rap-
idly as any of said property shall be sold by the parties of
the first part, that said party of the second part shall cause
to be made and executed by his trustee a release deed of
trust for each and every parcel of said property so sold by
said parties of the first part, releasing said property so sold
as aforesaid from the effect of said trust deed of said parties

of the first part, made and executed as aforesaid, to said party of the second part, bearing even date herewith, and immediately on the sale of any of said property by said parties of the first part, the selling price of the same shall be deposited to the credit of said party of the second part in the German National Bank of the city of Denver, until the amount received and deposited as aforesaid shall reach the sum of $16,000, and the sums so deposited as aforesaid in said bank shall be applied to the payment of the promissory note of even date herewith, for the sum of $16,000, made and delivered by said parties of the first part to said parties of the second part, and secured as aforesaid by said deed of trust, and when said sum of $16,000 shall have been deposited in said bank as aforesaid, said party of the second part shall cause to be made by his trustee and delivered to said parties of the first part a release deed of trust of said property from said deed of trust, given as aforesaid, and shall cancel and return to said parties of the first part said promissory note for $16,000.

" And it is further agreed by and between the parties hereto, that when said $16,000 shall have been paid in full, as aforesaid, by said parties of the first part to said party of the second part, and a release deed of trust shall have been executed by said trustee of the party of the second part, to said parties of the first part, releasing said lands from said trust deed, and said party of the second part shall return to said parties of the first part said promissory note so canceled and returned as aforesaid, then said parties of the first part shall make and execute to said party of the second part a good and sufficient warranty deed for an undivided ¼ interest in and to all of said real estate so platted as aforesaid remaining unsold at that time.

" And it is further agreed by and between the parties hereto, that no part or parcel of said real estate shall be sold by said parties of the first part except the proceeds of such sale be deposited as aforesaid to the order and credit of the party of the second part in said German National Bank of

the city of Denver, state of Colorado, to be applied as aforesaid to the payment of the said promissory note."

It is alleged in the complaint that soon after the date of the conveyance the land was subdivided into 880 lots, a park called "Olson Park" of forty acres, streets, alleys, etc. That the town or subdivision was called "Sheridan," and a plat of the same recorded. That between the date of the contract and the 27th day of February appellees sold 115 lots for $4,558.75, leaving unsold 665 lots, and the park. That the lots remaining unsold were of equal average value with those sold, and of the aggregate value of $28,535, and that the park was worth $9,000. That the 115 lots sold were, at the time of their respective sales, released by the trustee by an agreement with appellant, from the operation of the trust deed. That the consideration for the lots sold,—cash, and notes secured by trust deed,—was turned over to and accepted by appellant to be applied upon the note of appellees. That on the 27th day of February, 1889, there was a balance due appellant of $11,441, and that on that date Scott, McCourt and Wiswall fraudulently conveyed all the property remaining unsold to appellee, Leves, for the sum of $12,000,—$3,000 cash, and two notes of $4,500 each, due respectively in one and two years, secured by a deed of trust upon the property. That the cash, notes and trust deed were turned over to Hon. J. A. Cooper, trustee, and accepted by him in full payment of the balance due appellant, and the deed of trust released. That such release was obtained from the trustee by fraud, without compensation, and without the knowledge or consent of appellant. That on the 30th day of March, 1889, Leves conveyed the entire property by him purchased to a corporation called "The Denver Suburban Improvement Company," of which the appellees, Wiswall, Scott and Leves were the only incorporators; and that the conveyance was made to cheat and defraud appellant out of his interest in the property as reserved to him in the written contract, praying that the release executed by Cooper, as trustee, be canceled,— that the deed from Wiswall, Scott, McCourt and

VOL. I—7

Leves be canceled,— that appellees and The Denver Suburban Improvement Company be enjoined from disposing of or conveying any of the property,— and for a judgment of $12,000 for the balance remaining unpaid from appellees, etc.

Defendants answered, denying all the material allegations of fraud, conspiracy, etc., and aver that prior to the 27th day of February, 1889, they spent large sums of money in laying out, improving and advertising the property and in efforts to sell the same; that the 115 lots were all they succeeded in selling. Admit that there was still due and owing to the appellant $11,441.25, which would be due and payable March 1st. Aver that the sale to Leves was made in good faith and for the largest amount obtainable, and that they were obliged to sell to protect themselves against sale under the trust deed. Aver that the appellant had full knowledge of the sale to Leves, and that the trustee was authorized to accept the notes and security and release the trust deed. That by an agreement made between the parties the following order was executed to the trustee :—

"DENVER, COLO., Feb. 18, 1889.

"Hon. J. A. COOPER:

"*Dear Sir*—You will please continue to release land in Sheridan Subdivision as fast as the lots are sold, and receive cash and notes in payment for same in accordance with agreements on deposit in German Bank.

"PETER OLSON.

"Please release S. E. Browne, February 27, 1889."

That through such sale to Leves, appellees' note was fully paid, and the further sum of $558,75. A replication was filed, putting in issue the averments in the answer.

On March 1, 1890, a decree was entered, the court finding all the issues in favor of the appellees, but requiring them to pay to appellant the sum of $8,441.25, being the balance due him on the note for the purchase of the property, within ten days, such payment to take the place of the Leves note; and requiring the trustee to release the property from the Leves trust deed.

The only errors assigned are the following:

" First. The court erred in excluding pertinent and legal testimony in behalf of the appellant.

" Second. The court erred in admitting incompetent and irrelevant testimony in behalf of the appellees.

" Third. The finding and judgment and decree of the said court is contrary to law.

" Fifth. The evidence clearly shows that the last release made by the said trustee was void, because beyond his power to make, in this, that the time of payment on the note of the appellees to the appellant, to the extent of nine thousand dollars, was extended for one and two years without the knowledge or consent of the appellant, and without any consideration to him."

Messrs. BROWNE & PUTNAM and Mr. ALVIN MARSH, for appellant.

Messrs. STEVENS & WARD, for appellee.

REED, J.   The first and second of the supposed errors assigned may be disregarded.   No serious error was committed by the court in omitting or rejecting evidence.   It is true the evidence was allowed a wide range, but it seemed necessary for a full and proper understanding of the case.   There was considerable conflict in the testimony, but the preponderance appears to have been clearly with appellees, and is corroborated by circumstances and former course of dealing.   It is affirmatively alleged in the complaint that the sale to Leves was collusive, fraudulent, and made with the intention to defraud and injure appellant, but the evidence signally fails to sustain the allegation.   " It is equally a rule in courts of law and courts of equity that fraud is not to be presumed, but it must be established by proofs."   Coke, Book 10, 56; Story Eq. Juris. § 190.   Circumstances of mere suspicion leading to certain results will not, in either of these courts, be deemed sufficient ground to establish fraud.   *Trenchard*

*v. Wanley*, 2 P. Will. 126 ; *Townsend v. Lowfield*, 1 Ves. 35 ; *Walker v. Symonds*, 3 Swanst. 61.  Courts of equity do not require positive proof of fraud.  It may be inferred from or established by inferences from facts and circumstances.  In this case the conveyance to Leves, and by him to a corporation, of which he and other of appellants were the sole incorporators and stockholders, might upon its face be looked upon as colorable, collusive and suspicious, but this was insufficient.  Had the fact been shown that the property was conveyed for an inadequate price, far below its value, that fact in connection with the colorable transfers would have gone far to establish fraud.  Appellant failed to make such proof, while the evidence of appellees shows it was the utmost they could secure by strenuous efforts.

Whether or not appellant was cognizant of, and fully informed in regard to, the substitution of the Leves notes having one and two years to run after the maturity of the other note in place of the balance remaining due on that, is a question upon which there is quite a conflict of testimony, but the testimony of appellees appears to be sustained not only by the former course of dealing, but by the written order of February 18, 1889, under which was written:— "Please release S. E. Browne, February 27th, 1889."  General Browne having been at that time the attorney of appellant, and the date being that on which the substitution and release was made, the conviction is very strong that the matter was fully understood, and the allegation that the release was obtained from the trustee by the fraud of appellees is not sustained by the evidence, which would go far toward showing that if there was an error the trustee was misled by the request of counsel written under the order of appellant.  If the substitution was unwarranted, and worked a wrong by postponing the time of payment one and two years, it was cured by the judgment and decree of the court, requiring the balance due to be paid in ten days.  We think the findings and decree of the court were warranted by the evidence and that the judgment should be affirmed.

*Affirmed.*